Caroline Guerrieri                          *      IN THE
4030 Holbrook Lane
Huntington, MD 20639                        *      UNITED STATES DISTRICT

Plaintiff,                                  *      COURT

v.                                          *      FOR THE

Jeh Charles Johnson, Secretary              *      DISTRICT OF COLUMBIA
U.S. Department of Homeland Security
(United States Coast Guard)                 *
Washington, DC 20528
                                            *
Serve on:
                                            *
 United States Attorney's Office
 Civil Process Clerk                        *
 555 4th Street, NW,
 Washington, DC 20530                       *      Case No.:

 AND                                        *

 United States Attorney General             *
 U.S. Department of Justice
 950 Pennsylvania Avenue, NW                *
 Washington, DC 20530-0001
                                            *
 AND
                                            *
 Deputy Director, Office of Civil Rights
 United States Coast Guard                  *
 2703 Martin Luther King Jr. Ave., SE STOP 7000
 Washington, DC 20593-7000                  *

        Defendant.                          *

*     *     *     *     *     *     *     *     *     *     *     *     *

## **COMPLAINT**

Caroline Guerrieri, by and through her attorneys, Paul V. Bennett, Esq. and Bennett and

Associates, P.C., hereby sues Jeh Charles Johnson, Secretary, Department of Homeland Security

(hereinafter "DHS") and states as follows:

1

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42

U.S.C. §§ 2000e, et seq. (hereinafter "Title VII").

2.      This Court further has jurisdiction pursuant to the Age Discrimination in Employment

Act of 1967, as amended, 29 U.S.C. §§ 621 et seq. (hereinafter "ADEA").

3.      That all the actions complained of herein took place at the United States Coast Guard

(hereinafter "USCG" or "the Agency"), a DHS Department Component, located in

Washington, D.C.

4.      That at all times relevant hereto, Defendant DHS is a federal government agency

employing twenty (20) or more persons, and is an "employer" within the meaning of

Title VII and the ADEA.

5.      In accordance with Title VII, ADEA, and the Code of Federal Regulations (CFR),

Plaintiff has properly exhausted her administrative remedies before timely filing suit.

## FACTS COMMON TO ALL COUNTS

6.      Plaintiff (Date of Birth: December 3, 1963) joined the Department of Homeland

Security, United States Coast Guard (USCG) on November 23, 2008. She has served

thereafter as a Management and Program Analyst, GS-343-14, and as Project Lead

for the CG-9212 Workforce Operation & Support Services Division, which is part of

the CG-921 Office of Acquisition Workforce Management.

7.      At all times relevant hereto, Plaintiff's job duties as a Management and Program

Analyst have included, but are not limited to, administering and managing award

programs and the Confidential Financial Disclosure Program for CG-9, serving as

Project Lead for the Human Capital Strategic Program, recruiting new employees,

and actively participating in other human resources initiatives related to her office and position.

8.    At all times relevant hereto, Plaintiff's job duties as a Project Lead have included, but are not limited to, leading the Workforce Operation & Support Services Division, assisting employees with the performance of their duties, and advising employees on training they should undergo to better perform their job functions.

9.    Since November of 2008, Plaintiff has served as the Civilian Resource Coordinator ("CRC") for CG-9. However, because Defendant removed Plaintiff's access to the Civilian Personnel Reports and Management System (CPRMS) on June 21, 2011, *infra*, ¶ 34, she could no longer perform the essential functions of the CG-9 CRC and was thereby discharged from this position.

10.   At all times relevant herein, Kathryn Scott (age approximately forty-nine (49)) acted as Plaintiff's immediate supervisor, Gloria Potocek (age approximately fifty-eight (58)) acted as Plaintiff's second-level supervisor until her retirement from USCG in October of 2013, and Michael Tangora (age approximately fifty-seven (57)) acted as Plaintiff's third-level supervisor until his retirement from USCG in February of 2013.

11.   For the appraisal period November 24, 2008 through March 31, 2009, Plaintiff received an overall rating of "Exceeds" for her job performance. Plaintiff received a rating of "Exceeds" in all of the applicable core competencies listed in her Performance Plan and Evaluation, including the core competency for "Quality of Work."

12.   For the appraisal period April 1, 2009 through March 31, 2010, Plaintiff received an overall rating of "Exceeds" for her job performance. Plaintiff received a rating of

"Exceeds" in all of the applicable core competencies within her Performance Plan and Evaluation, including the core competency for "Quality of Work."

13.     At all times relevant herein, Emily Elliott[1] and Alice Gean are similarly-situated younger employees, both of whom work in CG-921 and were aged in their late twenties (20's) and/or early thirties (30's). Moreover, Ms. Scott supervised both Plaintiff and Ms. Elliott, who worked as Management and Program Analysts in CG-9212.

14.     Although Ms. Gean worked in CG-9211 and Mr. Troy Berry acted as her immediate supervisor, CG-9211 is a subcomponent within CG-921. Like Plaintiff, Ms. Potocek acted as Ms. Gean's and Ms. Elliott's second-level supervisor and Mr. Tangora served as Ms. Gean's and Ms. Elliott's third-level supervisor. Furthermore, Ms. Gean was a member of the Federal Career Intern Program (FCIP), until that program was discontinued on March 1, 2011, and Ms. Scott managed the interns in said Program. With Mr. Berry's approval, Ms. Scott could assign work projects to Ms. Gean for completion.

15.     At all times relevant herein, Ms. Jennifer Newman (approximately age thirty-five (35)) is another similarly-situated younger employee, as she works in CG-9212 as a Management and Program Analyst. Like Plaintiff, Ms. Scott and Ms. Potocek respectively acted as Ms. Newman's immediate and second-line supervisors.

16.     Plaintiff was not invited to participate in the March 15, 2011 meeting concerning the "CG-9 Award Program" or to give guidance on the presentation, even though managing this Award Program was part of her core job duties. Both Ms. Elliott and

---

[1] Upon information and belief, Ms. Elliott resigned from her job position sometime in late 2011 or early 2012.

4

Ms. Gean were invited to participate in this project, despite their lack of experience in administering award programs.

17.    Plaintiff was not invited to participate in the April 13, 2011 meeting for "Acquisition Human Capital Strategic Plan Refresh," even though this meeting concerned employee awards related to her core job functions.

18.    Plaintiff was not invited to attend the April 21, 2011 "CG-921 Office Chief Brief" to welcome Admiral Korn, an incoming flag officer, while both Ms. Elliott and Ms. Gean were invited to attend said briefing. Since Plaintiff began her employment with USCG in November of 2008, she has not been invited to any "CG-921 Office Chief Briefs" to welcome incoming flag officers assigned in the CG-9 organization.

19.    Sometime in 2011, Plaintiff administered the "Defense Equal Opportunity Organizational Climate Survey" to all of the CG-9 employees. Despite being in charge of coordinating, administering, and analyzing the Survey results, she was not included in the subsequent presentation of the data to upper management officials or discussions that followed the Survey's conclusion, while Ms. Elliott was included.

20.    For the appraisal period April 1, 2010 through March 31, 2011, Plaintiff was rated only "Meets" for the "Quality of Work" core competency. Had Plaintiff received an "exceeds" rating, she would have received a larger cash performance award at the end of the 2010/2011 performance cycle. Additionally, the "meets" rating and negative feedback contained in her April 1, 2010 – March 31, 2011 Performance Plan and Evaluation has interfered with her ability to acquire a lateral job transfer and/or compete for a promotion to a higher grade level.

21.    On May 12, 2011, Ms. Scott signed Plaintiff's April 1, 2010 – March 31, 2011

       Performance Plan and Evaluation as the Rating Official, while Ms. Potocek signed

       said Evaluation as the Approving Official on May 19, 2011.

22.    In late May of 2011, CG-9212 Workforce Operation & Support Services Division

       sought to promote Ms. Elliott to GS-14, but was unable to do so because of a DHS

       hiring freeze and Ms. Elliott's subsequent resignation from employment in December

       of 2011.

23.    Plaintiff received the April 1, 2010 – March 31, 2011 Performance Plan and

       Evaluation on June 3, 2011. This was the first time that Ms. Scott informed her that

       she would receive a "Meets" rating in the "Quality of Work" core competency.

24.    There had not been a change in the quality of Plaintiff's job performance from April

       of 2009 through March of 2011. Plaintiff continuously followed upper management's

       instructions and Ms. Scott never showed her any examples of work product that

       allegedly justified a lowered "Meets" rating.

25.    On June 8, 2011, Plaintiff was not invited to review the "CG-92 Customer

       Satisfaction Survey" with the Stakeholder Satisfaction Working Team, while Ms.

       Elliott participated in said review. Plaintiff had led the administration and analysis of

       said Survey.

26.    Plaintiff was not invited to attend the June 9, 2011 "Human Capital Support"

       meeting, although as Project Lead for the CG-9212 Workforce Operation & Support

       Services Division, she is "responsible for leading assigned CG-9's Human Capital

       (HC) projects, programs, and initiatives" and managing all Human Resource systems

"to ensure operations and procedures support a cohesive human capital management strategy and implementation plan." Ms. Elliott participated in this meeting.

27.     Plaintiff met with Ms. Scott on June 9, 2011 to discuss the April 1, 2010 – March 31, 2011 Performance Plan and Evaluation. Although Plaintiff acquired a rating of "Exceeds" under the "Quality of Work" core competency in her 2008 and 2009 performance appraisals, and although she had never been placed on a performance improvement plan and had never been formally counseled with regard to work quality, Ms. Scott did not agree to change the "Meets" rating to "Exceeds."

28.     On June 9, 2011, Plaintiff spoke with Joanne Turner, DHS's Supervisor of Labor and Employee Relations, to discuss the discriminatory nature of the "Meets" rating.

29.     On June 13, 2011, Plaintiff spoke with Marissa Marinos, an EEO Counselor, to discuss the discriminatory nature of the "Meets" rating.

30.     On June 14, 2011, Plaintiff was excluded from the "CG-9 Direct Hire" event, even though Ms. Elliott participated. Plaintiff had led all preparation efforts for this event.

31.     On June 14, 2011, Plaintiff filed an internal Administrative Grievance ("the Grievance") to contest the "Meets" rating in her April 1, 2010 – March 31, 2011 Performance Plan and Evaluation. The Grievance stated the "Meets" rating constituted a "form of retribution," explained the hostile nature of the work environment in CG-921, and requested that upper management follow all laws which govern employment personnel practices. On June 14, 2011, the Grievance was submitted to Mr. Tangora and cc'd to Ms. Scott and Ms. Potocek.

32.     After Plaintiff filed her Grievance on June 14, 2011, Ms. Newman began to acquire some of Plaintiff's core job duties, including, but not limited to, the processing of

various types of awards for CG-9 personnel. Ms. Newman also acquired other higher-grade job duties, including, but not limited to, responsibility over the CG-9 Web Time and Attendance System. At all times relevant herein, Plaintiff has never been given higher-grade job duties.

33. Plaintiff had unlimited access to Ms. Scott's "Outlook" calendar from November of 2008 to June of 2011. However, on June 21, 2011, seven (7) days after she filed her Grievance, Plaintiff was thereafter not allowed access to the "Outlook" calendars of Ms. Scott or Ms. Potocek. This lack of access made it extremely difficult for Plaintiff to schedule meetings with and/or for her supervisors, other office employees, and individuals from outside entities, thereby interfering with her job performance.

34. Similarly, on June 21, 2011, Plaintiff was no longer allowed access to the Civilian Personnel Reports and Management System (CPRMS) and consequently was discharged as the Civilian Resource Coordinator (CRC), *supra*, ¶ 9. Plaintiff's inability to use CPRMS prevented her from performing important job functions, such as providing needed information for CG-9 vacancy reports and overtime usage analysis. Furthermore, Plaintiff's discharge as the CG-9 CRC significantly affected her ability to manage Human Resource systems and prevented her from governing civilian awards programs, thereby resulting in a significant reduction of her job duties.

35. Upon information and belief, Ms. Elliott and Ms. Newman both still had access to CPRMS after Plaintiff's access was removed.

36. Since Plaintiff filed her June 14, 2011 Grievance, Plaintiff has not been invited to attend any senior staff meetings within CG-9.

8

37.   Since Plaintiff filed her June 14, 2011 Grievance, she has been subjected to retaliatory harassment characterized by, but not limited to the following severe and/or pervasive employment actions: being excluded and ignored by her supervisors, other CG-9 supervisors, and co-workers; receiving negative attitudes from co-workers and her supervisors; not being permitted to access her supervisors' Outlook calendars; experiencing isolation by not being included in emails and other communications that are important to the performance of Plaintiff's job duties; and receiving shunning reactions from her supervisors and other CG-9 supervisors for a prolonged period of time, putting Plaintiff in an uncomfortable and humiliating position.

38.   On June 24, 2011, Plaintiff wrote a letter to Mr. Tangora describing the hostile work environment that emerged since filing her Grievance.

39.   Additionally, on June 24, 2011, Plaintiff contacted Robert Thomas, an eeo official, and alleged reprisal for filing the Grievance, harassment (non-sexual), and age-based discrimination. Mr. Thomas contacted Ms. Scott shortly thereafter to discuss Plaintiff's discrimination and retaliation claim.

40.   On July 14, 2011, Plaintiff wrote a subsequent letter to Mr. Tangora, explaining she had been subjected to age-based discrimination since November of 2009. She thereafter experienced a significant reduction in work assignments and daily tasks because of her age.

41.   Plaintiff filed an Individual Complaint of Employment Discrimination on August 29, 2011 with DHS, alleging age discrimination and retaliation.

42.   In late May of 2012, DHS sought to promote Ms. Newman to GS-13, but was unable to do so because of the DHS hiring freeze. However, because Ms. Newman acquired

some of Plaintiff's core job duties as well as other higher-grade job duties, *supra*, ¶ 32, Ms. Newman received a GS-13 accretion-of-duties promotion on January 27, 2013.

43.   At all times relevant herein, Plaintiff has never been considered for an accretion-of-duties promotion and/or grade level promotion.

44.   At all times mentioned herein, Plaintiff was meeting and exceeding her employer's legitimate job expectations.

**COUNT I**
**AGE DISCRIMINATION**
**(Disparate Treatment)**
**Age Discrimination in Employment Act of 1967, as amended,**
**29 U.S.C. §§ 621 et seq.**

45.   Plaintiff hereby re-alleges paragraphs 1 through 44 of this Complaint as though fully set forth herein.

46.   Plaintiff was qualified and satisfactorily performing her duties as a Management and Program Analyst and Project Lead.

47.   Plaintiff was subjected to adverse treatment, including without limitation, not being invited to participate in numerous meetings, projects, and briefings, receiving a "Meets" rating for the "Quality of Work" core competency for the appraisal period April 1, 2010 through March 31, 2011, never receiving higher-grade duties or being considered for an accretion-of-duties promotion and/or grade level promotion, denial of access to supervisors' "Outlook" calendars, denial of access to CPRMS, discharge of a major job responsibility as the CRC for CG-9, significant reduction in other job duties, and harassment in the workplace.

48. Plaintiff's age was the "but-for factor" behind the described adverse treatment, as Ms. Elliott, Ms. Gean, and Ms. Newman, similarly-situated younger employees, were not subjected to said adverse treatment.

49. That the intentional discriminatory actions complained of above were done with malice and/or with reckless indifference to Plaintiff's rights.

50. As a direct and proximate result of the Defendant's discriminatory actions, Plaintiff has suffered lost future earnings capacity and emotional distress, and incurred attorneys' fees and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT II**
**RETALIATION**
**(Adverse Actions, Protected Activity Deterrents, and Termination)**
**Title VII of the Civil Rights Act of 1964**
**42 U.S.C. §§ 2000e et seq.**

51. Plaintiff hereby restates and incorporates paragraphs 1 through 44 of this Complaint as though fully set forth herein.

52. Plaintiff respectively spoke with DHS's Supervisor of Labor and Employee Relations and the Defendant's eeo office on June 9 and 13, 2011 about the discriminatory nature of the "Meets" performance rating. Plaintiff further filed an internal Administrative Grievance on June 14, 2011 and repeatedly complained to upper management and Defendant's eeo office soon thereafter, which complaints constituted "legally protected activities" under Title VII.

53. The aforementioned legally protected activities were known by management to have occurred.

54.    The subsequent exclusion from the "CG-9 Direct Hire" event, denial of access to supervisors' "Outlook" calendars, denial of access to CPRMS, discharge of a major job responsibility as the CRC for CG-9, never receiving higher-grade duties or being considered for an accretion-of-duties promotion and/or grade level promotion, significant reduction in other job duties, isolation from meetings and briefings, and retaliatory harassment as set forth in the above-referenced Facts Common to All Counts amounted to illegal retaliation.

55.    That the aforementioned acts of retaliation for complaining of discrimination and retaliation constitute unlawful employment practices pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

56.    That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee based upon her age and in retaliation for having engaged in legally protected activities.

57.    That the unlawful employment practices complained above were intentional.

58.    That the retaliatory employment practices described above have caused and will continue to cause Plaintiff to suffer lost earning capacity, severe emotional distress, humiliation, and mental anguish.

59.    That the intentional retaliatory actions complained of above were done with malice and/or with reckless indifference to Plaintiff's rights.

60.    As a direct and proximate result of the Defendant's retaliatory actions, Plaintiff has suffered lost future earnings capacity, emotional distress, attorney's fees, and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## PRAYER FOR DAMAGES

WHEREFORE, for the foregoing reasons, Caroline Guerrieri, Plaintiff, demands judgment against Defendant, Jeh Charles Johnson, Secretary, U.S. Department of Homeland Security (U.S. Coast Guard) as follows:

a. $300,000.00 as compensatory damages;

b. Prejudgment and post judgment interest;

c. Award attorney's fees and costs, including expert witness fees, as allowed by law;

d. And for such other and further relief as this Honorable Court deems just and equitable.

Respectfully Submitted,

_____/s/_____
Paul V. Bennett, Esq. (DC Bar No. 427358)
Bennett and Associates, P.C.
133 Defense Hwy., Suite 209
Annapolis, Maryland 21401
Tel: (410) 974-6000
Email: pbennett@paulvbennett.com

*Attorney for Plaintiff*

## DEMAND FOR JURY TRIAL

Caroline Guerrieri, Plaintiff, hereby demands that this matter be tried by jury.

_____ /s/_____
Paul V. Bennett, Esq. (DC Bar No. 427358)